# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| SHARON HENDERSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )     No. 2:12-0296-DGK-SSA |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Sharon Henderson ("Henderson") seeks judicial review of the Commissioner of Social Security's limited approval of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. The Administrative Law Judge ("ALJ") found Henderson disabled as of April 9, 2010. Henderson contends she has been disabled since April 19, 2007, when she was injured in a workplace accident.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits and SSI benefits on July 11, 2007, alleging a disability onset date of April 19, 2007. The Commissioner denied her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and on August 4, 2009, issued her decision holding Plaintiff was not disabled as defined in the Act.

On April 3, 2010, the Appeals Council vacated this decision and remanded the case back to the ALJ so she could: (1) determine whether Plaintiff was disabled as the result of a mental impairment, and (2) consider and discuss the opinions of three doctors. R. at 104. Following remand, the ALJ held another administrative hearing and then issued a partially favorable decision finding the Plaintiff was disabled as of April 9, 2010.

Plaintiff again requested appellate counsel review. On January 12, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2] Plaintiff contends the ALJ erred at several different steps by: (1) finding that Plaintiff did not become disabled until April 9, 2010; (2) finding Plaintiff was able to perform light work; (3) finding Plaintiff is mentally capable of performing simple unskilled work; and (4) improperly evaluating Plaintiff's credibility.

### A. Substantial evidence on the record supports the ALJ's finding that Plaintiff became disabled on April 9, 2010.

Plaintiff argues that the ALJ erred in finding her disabled as of April 9, 2010. Plaintiff contends the ALJ cited the wrong date as her disability onset date. She claims the ALJ should have used the date of her September 2009 examination by Dr. Hasan Askari, M.D. as her onset date. She also argues the record supports finding an onset of disability prior to this date.

The ALJ found that the Plaintiff became disabled as of April 9, 2010, because medical records from that date show that her osteoarthritis had finally progressed to the point it caused her serious functional limitations. R. at 21. Substantial evidence on the record supports this

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

finding. As the ALJ noted, rheumatologist Dr. Kevin M. Latinis, M.D., sent a letter to Dr. Askari on April 9, 2010, diagnosing Plaintiff with corrosive osteoarthritis which caused severe, debilitating symptoms in Plaintiff such as fatigue, sleep disorder, generalized musculoskeletal pain, and depression. R. at 21, 731. The ALJ also held April 9, 2010, was the onset date because that was when her claims of disabling symptoms finally became credible. R. at 21.

Contrary to Plaintiff's suggestion, the ALJ did not intend to find the onset date was September 29 or September 30, 2009,[3] the date Dr. Askari performed an earlier exam. The ALJ's decision reads as follows:

> [T]he undersigned finds that beginning on April 9, 2010, the claimant's allegations regarding her symptoms and limitations [that she was disabled] are generally credible.
>
> Medical records from April 9, 2010 show that the claimant suffers from osteoarthritis with severe symptoms such as fatigue, sleep disturbance and generalized musculoskeletal pain (Exhibit 20F at 2). Dr. Askari noted that the claimant had an abnormal musculoskeletal exam with deformed proximal phalanges with abduction of the left middle finger and right wrist and mild distal joint deformity (Exhibit 20F at 5). The undersigned notes that the claimant appeared frail and thin at the hearing on August 17, 2010. The undersigned has afforded significant weight to the objective medical findings of Dr. Askari, which would restrict the claimant to less than occasional fine fingering and handling. The claimant's condition has significantly deteriorated. The medical evidence of record indicates a progression in the claimant's osteoarthritis indicating the presence of serious functional limitations.

R. at 21. Although this portion of decision refers to Dr. Askari's late September 2009 exam during which he observed an abnormality in Plaintiff's hands, the ALJ is not finding Plaintiff became disabled solely because of the hand abnormality. Rather, the ALJ is summarizing the evidence supporting the ALJ's conclusion that Plaintiff became disabled as of April 9, 2010. R.

---

[3] Dates in the treatment notes from this exam indicate it occurred on either September 29, 2009 or September 30, 2009. R. at 720.

at 21. This is why the ALJ also noted that "the claimant appeared frail and thin at the hearing on August 17, 2010," she was listing all the evidence supporting her conclusion.

Other notes from the September 2009 exam confirm that the ALJ did not mistakenly identify Plaintiff's onset date as April 9, 2010. The ALJ ultimately found Plaintiff was disabled in large part because of her osteoarthritis. R. at 21. But during the September examination, Dr. Askari noted Plaintiff had full strength in her arms, forearms, and wrists; he did not diagnose her with any form of arthritis. R. at 722-23. Consequently, the ALJ did not err in identifying April 9, 2010 as the onset date. Although this section of the ALJ's decision is not a model of clarity, there is no error here warranting reversal or remand. At worst, this portion of the decision displays a deficiency in opinion writing technique which had no bearing on the result. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

There is also no merit to Plaintiff's suggestion that the Court should overturn the ALJ's decision because substantial evidence supports a finding that her disability arose earlier. This Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney*, 228 F.3d at 863. As long as substantial evidence in the records supports this decision, the court may not reverse, even if substantial evidence in the record also supports a different result. *Id.* Since substantial evidence supports an onset date of April 9, 2010, the Court affirms.

**B.     The ALJ did not err in finding Plaintiff retained the RFC to perform light work prior to April 9, 2010.**

Plaintiff also contends substantial evidence of record does not support the ALJ's finding that she had the ability to perform substantially all of the requirements for light work up until April 9, 2010. Plaintiff contends she was limited to sedentary work well before April 9, therefore the ALJ should have applied the Medical-Vocational Guidelines ("the Grids") to

5

determine whether she was disabled. Plaintiff also argues the ALJ improperly discredited the opinion of her primary treating physician, Dr. G. Reed Wouters, D.O., that Plaintiff's psychological symptoms interfered with her ability to complete a normal workday.

To begin, the ALJ did not err in discrediting this portion of Dr. Wouters' opinion. As the ALJ noted, Dr. Wouters' opinion that Plaintiff's psychological symptoms severely limited her ability to work is inconsistent with Dr. Wouters' other findings, Plaintiff's own testimony, and other doctors' observations. R. at 17. For example, despite finding Plaintiff's mental impairments prevented her from working, Dr. Wouters found they did not restrict her daily activities or social functioning, and they caused only moderate deficiencies in concentration, persistence, or pace. R. at 705.

His opinion is also inconsistent with Plaintiff's own assessment of her mental capabilities. At the first administrative hearing in June 2009, Plaintiff testified she spent "a couple of hours" a day reading to determine the cause of her symptoms. R. at 45. In August of 2010, she testified that she still read about an hour a day. R. at 76-77. Dr. Wouters' opinion also conflicts with Dr. Askari's observations in late September of 2009 that Plaintiff was alert and oriented with no impairment in memory, and that she had a normal attention span and ability to concentrate. R. at 722.

Additionally, substantial evidence on the record supports the ALJ's determination that Plaintiff could perform light work in the time leading up to April 9, 2010. At a physical therapy session in May 2007, Plaintiff lifted 40 pounds with no complaints of shoulder pain. R. at 363. As recently as 2008, Plaintiff worked part-time as a dishwasher and could lift up to 50 pounds. R. at 68. On February 12, 2008, Dr. David Clymer, M.D., examined Plaintiff and opined she could work, but recommended she avoid lifting 25 pounds overhead. R. at 441. Six weeks later Dr. Clymer re-examined her and found her condition had improved and she could work without

any restrictions. R. at 438-39. In August 2008, Dr. David Patt, M.D., reported Plaintiff walked normally, could walk on her toes, was able to squat fully, and had full range of motion in her lumbar spine and shoulders. R. at 425. Dr. Patt also noted that Plaintiff reported she was fixing her roof. R. at 424. On October 1, 2009, Dr. Askari noted Plaintiff had full strength in her extremities, a normal gait, and she could walk on her heels and toes. R. at 722. Finally, at her administrative hearing in August 2010, Plaintiff testified she could probably lift up to 25 pounds. R. at 75. In light of all of this record evidence, the ALJ did not err in finding Plaintiff retained the residual functional capacity to perform light work until April 9, 2010.

**C.    The ALJ did not err in finding Plaintiff possessed the mental capacity to perform simple, unskilled work.**

Next, Plaintiff argues the ALJ erred in formulating her mental RFC and finding she can function with few limitations. Plaintiff contends the ALJ erred in discrediting the opinion of psychologist Annie Anderson, Psy. D., R.N., that Plaintiff's bipolar disorder and Post Traumatic Stress Disorder ("PTSD") significantly impaired her judgment and insight.

The ALJ acknowledged Ms. Anderson's opinion but gave it little weight because Ms. Anderson had not examined Plaintiff's prior records; the medical records as a whole did not support her opinion; and Plaintiff had not received any treatment or prescriptions for a bipolar disorder, nor did any exams confirm the existence of a bipolar disorder. R. at 18. These are valid reasons to discount her opinion. *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (holding some of the factors an ALJ may consider in determining a claimant's mental impairments include failure to seek mental treatment and lack of medical evidence indicating a mental impairment).

The ALJ also noted Ms. Anderson was "possibly sympathetic to the claimant and based her opinions on the claimant's subjective complaints." R. at 18. Given the disparity between the

7

objective medical evidence and Ms. Anderson's opinion, the ALJ did not err in suspecting that Ms. Anderson's opinion might have been influenced by sympathy for the Plaintiff. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (Posner, J.) (internal citation omitted) (noting some physicians "will often bend over backwards to assist a patient in obtaining benefits."). Consequently, the ALJ did not err in discounting Ms. Anderson's opinion.

**D.     The ALJ's credibility analysis is supported by substantial evidence.**

Finally, Plaintiff argues the ALJ's finding discrediting her testimony is not supported by substantial evidence on the record. Plaintiff contends the ALJ failed to consider whether her failure to pursue treatment was a medically-determinable symptom of her mental illness. She also argues her activities of daily living and Dr. Diane Pennington's observations do not discredit her credibility. There is no merit to these arguments.

Consistent with 20 C.F.R. § 416.929 and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1983), the ALJ gave good reasons for not fully crediting Plaintiff's testimony. First, as the ALJ noted, Plaintiff's medical treatment and use of medication were inconsistent with the symptoms alleged. R. at 19. Plaintiff had relatively infrequent doctor visits for her allegedly disabling mental symptoms, there were significant gaps in treatment, and she failed to attend therapy. R. at 19, 45, 76. Because a claimant's "failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits," the ALJ did not err. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Plaintiff intimates her failure to pursue treatment was itself a symptom of her mental illness, as in *Pate-Fires v. Astrue*. 564 F.3d 935, 946 (8th Cir. 2009). This case is not analogous, however, because in *Pate-Fires* the evidence "overwhelmingly" demonstrated that the claimant's failure to take medication and seek treatment was attributable to her mental

8

illness. *Id.* Here there is no evidence suggesting Plaintiff's failure to seek treatment was a by-product of her mental illness.

Plaintiff's activities of daily living were also inconsistent with her allegations of disability. R. at 19. Plaintiff reported she lives independently, cooking and cleaning (as much as her physical limitations will allow) on a daily basis. R. at 19, 48, 266, 303, 305, 358 358. Plaintiff also reported she was able to care for herself, with some limitations. R. at 19, 304. Plaintiff left her house a couple times a day, shopped regularly, and went out alone. R. at 19, 306. Additionally, despite her allegations of cognitive problems, Plaintiff was able to pay bills, handle a savings account, count change, and use a checkbook or money orders. *Id.* She also socialized with others by playing cards and drinking coffee. R. at 19, 77, 307. In August of 2008, Plaintiff reported she was working on fixing her roof herself. R. at 424. These acts are inconsistent with her allegations that she is disabled and justify discrediting her testimony. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

The ALJ also observed that Plaintiff made inconsistent statements about her abilities throughout the record. R. at 19. Medical records show that Plaintiff repeatedly denied that she had been prescribed pain medication when, in fact, she had. R. at 19, 365, 424, 685, 691. Additionally, during a physical therapy session, Plaintiff reported a pain level of 7, which is inconsistent with Plaintiff's tolerance for activity and ability to lift 40 pounds with no complaint of shoulder pain. R. at 363. An ALJ may disbelieve a claimant's subjective reports of pain because of such inconsistencies. *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004).

Plaintiff's work history also weighs against her credibility. Plaintiff worked part-time as a dishwasher as recently as 2008, R. at 67, and even part-time work detracts from a claimant's credibility. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (affirming ALJ's holding that claimant's working ten hours per week undermined her credibility). Furthermore,

9
Case 2:12-cv-00296-DGK   Document 21   Filed 09/16/13   Page 9 of 11

the dishwashing job ended because the restaurant closed, not because Plaintiff's impairments forced her to stop. R. at 67. The fact that a claimant leaves a job for reasons other than her medical condition may also be considered in assessing her credibility. *Medhaug*, 578 F.3d at 816-17.

The record also indicates Plaintiff embellished her symptoms. During Dr. Clymer's examination on January 7, 2008, he noted "there is certainly some evidence of symptom magnification with rather diffuse vague symptoms throughout the left shoulder, back, arm, hip and leg." R. at 445. Dr. Clymer also noted that her "subjective sense of discomfort seems to be somewhat exaggerated." R. at 446. This damages her credibility. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).

Finally, the ALJ did not err in finding that Plaintiff's poor work history detracted from her credibility. R. at 20. Plaintiff's highest earning year was 2006 when she earned $14,427; in most years she did not earn over $10,000. R. at 213. Following her workplace injury in 2007, Dr. Pennington, the workers' compensation doctor evaluating the Plaintiff, opined she was not working by choice. R. at 365. Dr. Pennington also heard Plaintiff "angrily" remark that she did not qualify for disability. R. at 365. Although Plaintiff argues Dr. Pennington's observations are not representative of the evidence as a whole, this misses the point: Dr. Pennington's report demonstrates Plaintiff's poor work history is due to a lack of motivation rather than a lack of ability, thus Plaintiff's self-reported limitations should be viewed with some skepticism. *Frederickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2005) (discounting claimant's credibility because of his "sporadic work record reflecting relatively low earnings and multiple years with no reported earnings").

Because the ALJ articulated the inconsistencies she relied upon in discrediting Plaintiff's testimony, and substantial evidence in the record supports this finding, the ALJ's credibility determination is affirmed.  *Peña v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

## Conclusion

The Court finds the Commissioner's determination is supported by substantial evidence on the record.  Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     September 16, 2013                /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT